**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| ROBERT BATES, | : | Case No. 1:22-cv-337 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | District Judge Douglas R. Cole |
| | : | Magistrate Judge Karen L. Litkovitz |
| | : | |
| OHIO DEPARTMENT OF | : | |
| REHABILITATION AND | : | |
| CORRECTIONS, *et al*., | : | |
| | : | |
| Defendants. | : | |

**ORDER and**
**REPORT AND RECOMMENDATION**

Plaintiff, an inmate at the Southern Ohio Correctional Facility (SOCF) in Lucasville, Ohio, brings this civil rights action against the Ohio Department of Rehabilitation and Corrections (ODRC), ODRC Director Annette Chambers-Smith, SOCF Warden Ronald Erdos, Linnea Mahlman, and twenty-six other individuals employed at SOCF, for alleged violations of his rights.   Plaintiff states that he sues the individual defendants in their individual capacities. (Doc. 1, at PageID 9).   Plaintiff has paid the filing fee.

This matter is before the Court for a s*ua sponte* review of the complaint (Doc. 1) to determine whether the complaint or any portion of it should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief.   *See* Prison Litigation Reform Act of 1995 § 805, 28 U.S.C. § 1915A(b).   Also before the Court is plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order.   (Doc. 7).

The screening procedures established by § 1915 apply to complaints filed by prisoners

against governmental entities, officials or employees regardless of whether the plaintiff has paid the filing fee, as in this case, or is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915A(a); *Hyland v. Clinton*, 3 F. App'x 478, 479 (6th Cir. 2001); *Bell v. Rowe*, No. 97-4417, 1999 WL 196531, at *1 (6th Cir. Mar. 22, 1999) (citing *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997)); *see also Fleming v. United States*, 538 F. App'x 423, 426 (5th Cir. 2013) (per curiam) (citing *Ruiz v. United States*, 160 F.3d 273, 274 (5th Cir. 1998)); *Miller v. Edminsten*, 161 F. App'x 787, 788 (10th Cir. 2006); *Lewis v. Estes*, No. 00-1304, 2000 WL 1673382, at *1 (8th Cir. Nov. 8, 2000) (per curiam) (citing *McGore* and Seventh and Second Circuit Court decisions).

## I.     Screening of Complaint

### A.     Legal Standard

A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez,* 504 U.S. 25, 32 (1992); *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of prisoner complaints that fail to

2

state a claim upon which relief may be granted.   28 U.S.C. § 1915A(b)(1).   A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers."   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).   By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).   The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation."   *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).   Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).   A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."   *Twombly*, 550 U.S. at 555.   Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."   *Id.* at 557.   The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."   *Erickson*, 551 U.S. at 93 (citations omitted).

3

**B.     Plaintiff's Complaint**

The Court understands plaintiff's complaint to consist of the following eighteen groups of claims. *See Erickson*, 551 U.S. at 94; *see also* Fed. R. Civ. P. 8(e).

**i.     Claims against Defendants ODRC, Chambers-Smith, and Erdos**

Plaintiff alleges that the ODRC is the entity that employs the defendants.   He alleges that Chambers-Smith is responsible for the facilities under her control and that Erdos is liable for the actions of the employed officers and for the safety and security of the individuals incarcerated at SOCF.  (Doc. 1, at PageID 9).

**ii.     Claims against Defendant Mahlman**

Plaintiff alleges, without factual elaboration, that Mahlman has denied him access to the SOCF grievance procedure, failed to properly investigate his complaints, falsified state documents, covered-up the actions of the other defendants, and retaliated against him by placing him on grievance restriction.   Plaintiff claims that because of being placed on grievance restriction, he is unable to properly document alleged employee misconduct at SOCF.   (Doc. 1, at PageID 10).

**iii.     Claims against Defendant C.O.s Milner and D. Woods**

Plaintiff alleges that on February 20, 2021, C.O. Woods was making a list of the inmates on L3 who did not go to "chow."   Plaintiff claims that as Woods was making the list, C.O. Milner opened every door on the 1-20 range, in violation of ODRC safety policies.   Plaintiff further claims that as a result of the cell doors being open, Inmate Ogletree ran into plaintiff's cell and attacked him.   Plaintiff alleges that prior to the attack Ogletree had threatened plaintiff by yelling, "I'm gone wack you after chow."   Plaintiff claims that Woods witnessed Ogletree

4

making threats, ordered him to stop, and then exited the pod and went into the booth.
According to plaintiff, Ogletree continued to threaten him, and Woods returned to the pod and
shook down Ogletree's cell.   Plaintiff alleges that Woods lied on a conduct report following the
attack "to cover up the fact he failed to do his job."   (Doc. 1, at PageID 11-12).

### iv.     Claims against Defendant C.O.s Murry, Davis, S. Wasmer, C. Justice, and T. Wellman, and Defendant Lts. Hale and J. Kinner

Plaintiff alleges that on May 8, 2021, between 5:17 and 5:25 p.m., C.O.s Murry and
Davis pulled him out of his cell to shake it down.   Plaintiff claims that while in the cell, Murry
and Davis found a bottle of urine and, instead of issuing a conduct report, put all of plaintiff's
property on his bed and sprayed the bottle of urine on the bed and floor.   Plaintiff alleges that
Murry and Davis then left his cell, taking the bottle.

Plaintiff alleges that, between 6:00 and 6:15 p.m., Lt. Hale conducted a range check and
plaintiff informed him of the incident with Murry and Davis.   Hale allegedly responded by
asking Murry and Davis, "Is this the one you was telling me about if he get out of line call me
back and we get him back in line"?   Plaintiff claims that he then told Hale that he was having
chest pains and Hale stated, before exiting the range, "You better lay down for you be in a world
of hurt."

Plaintiff alleges that at 6:30 p.m., Hale returned with Lt. Kinner and C.O.s Wasmer,
Justice, and Wellman.   Plaintiff was allegedly told to "cuff up" to go to the infirmary.   In the
infirmary, plaintiff allegedly spoke to a nurse and an EKG was performed.   Plaintiff asserts that
Hale stated, "Since you made me do all this extra work and ain't nothing wrong with you we
gone have some fun."   Plaintiff asserts that Hale punched him in the mouth and the four other
C.O.s beat him in the head, back, and face, while Nurse Sammons, who is not named as a

defendant,[1] watched.   Plaintiff asserts that no use of force was reported in violation of ODRC policy.   Plaintiff claims that as a result of the assault he suffered a chipped tooth, a split lip, swelling to the left side of his face, and abrasions under his eye.   (Doc. 1, at PageID 12-14).

> **v.** **Claims against Defendant C.O.s B. Gaffin and Harr and Defendant Sgt. Barney**

Plaintiff alleges that on September 6, 2021, between 3:25 and 3:31 p.m., C.O. Gaffin was conducting a range check.   According to plaintiff, Gaffin stopped at plaintiff's cell, called plaintiff a "snitch" for writing up an unreported use of force on May 8, 2021, and tried to break plaintiff's arm through the cuff port.   Plaintiff claims that Gaffin did not report this incident.

Plaintiff states that the next morning he reported the incident to Nurse Rayburn, who is not named as a defendant.   She allegedly told plaintiff to fill out an "HSR" (health service request), and he was seen that night between 9:30 and 10:30 p.m.   Plaintiff claims that the next morning, September 8, 2021, he was assaulted by an inmate.   Plaintiff alleges that even though the camera showed that he was spit on, pushed, and forced to defend himself, Sgt. Barney retaliated against him by sending him to solitary confinement.   Although not entirely clear, it appears that plaintiff alleges that while in solitary confinement, C.O.s Gaffin and Harr conspired with one another to cover up that Gaffin had not followed policy on September 6, 2021, by issuing a false conduct report against plaintiff to stop him from reporting the incident.   (Doc. 1, at PageID 14-15).

---

[1] Several of plaintiff's allegations are asserted against non-defendant third parties.   To the extent that plaintiff asserts claims against non-defendants, those claims are subject to dismissal.

### vi.    Claims against Defendant C.O. Duckworth

Plaintiff alleges that on October 21, 2022, at 2:35 p.m., C.O. Duckworth called him a "fag" and threatened to toss his cell when plaintiff asked him to wear his mask.   Plaintiff alleges that Duckworth returned a couple of minutes later and stated, "Your family photographs and legal papers going to be flushed for running your mouth."   Plaintiff states that at 2:45 p.m. Sgt. Chinn, who is not named as a defendant, arrived.   Duckworth purportedly told plaintiff, "As long as you let me search your cell and fuck your shit up you won't go to the hole."   Duckworth then allegedly told Chinn that Duckworth "didn't have to run [plaintiff] to the hole he was just going to toss [his] cell" and proceeded to throw plaintiff's property around and flush his legal documents and photographs.   Plaintiff claims that Duckworth exited the cell wearing his mask and placed plaintiff, who had earlier exited the cell, back inside.   (Doc. 1, at PageID 16).

### vii.    Claims against Defendant C.O. Murry

Plaintiff alleges that on November 10, 2021, C.O. Murry was conducting a range check between 8:15 and 8:20 pm and called plaintiff a "snitch."   Plaintiff alleges that he asked for a grievance form and, in response, Murry threatened to spray him with "O.C." (pepper spray). (Doc 1, at PageID 16).

### viii.    Claims against Defendant C.O.s Tabor and Kelly

Plaintiff alleges that on November 18, 2021, C.O. Tabor was conducting a range check at 3:57 p.m. without a mask on.   Plaintiff alleges that when he asked Tabor to put his mask on, Tabor looked at plaintiff's name and exited the range.   Plaintiff claims that Tabor returned at 4:25 p.m. and told him to "cuff up" so that Tabor could "toss [his] cell."   Plaintiff alleges that he asked Tabor to call a supervisor, and Tabor threated to spray plaintiff.   Plaintiff states that he

complied with the order to cuff-up out of fear of getting sprayed and was placed in the shower.

Tabor and C.O. Kelly then allegedly entered plaintiff's cell and destroyed his property and legal

documents.   Plaintiff alleges that Tabor conducted another range check at 7:17 p.m. without his

mask and continued not to wear his mask for the remainder of his shift.   (Doc. 1, at PageID 17).

### ix.    Claims against Defendant Lts. Eaches and Hale

Plaintiff alleges that on January 3, 2022, Lts. Hale and Eaches, and Lt. Cooper, who is

not named as a defendant, came to his cell between 12:50 and 1:20 a.m. regarding an incident

that plaintiff allegedly did not partake in and told plaintiff to "cuff up [he] was going to the

hole."   Plaintiff states that he is on chronic care and is being treated for high blood pressure.

Plaintiff also claims that he has issues with stress and anxiety attacks that mimic heart attacks.

According to plaintiff, at the time of this incident his meds were being re-ordered.   Plaintiff

alleges that he collapsed in the hallway and was placed in a wheelchair and taken to the

infirmary.   Plaintiff states that after he was assessed by Nurse James, who is not named as a

defendant, he was wheeled to the infirmary hallway and told to "stand and walk."   Plaintiff

states that he tried to comply but when he took a step, he felt a sharp pain and collapsed.

Plaintiff alleges that Hale and Eaches activated their body cams, snatched him off the floor, and

applied force to his wrist in an attempt to break his hands.   (Doc. 1, at PageID 18).

### x.    Claims against Defendant Lt. Eaches

Plaintiff alleges that on January 3, 2022, Lt. Eaches issued him a false conduct report.

Plaintiff asserts that, as a result, he was placed into a filthy cell in solitary confinement without

sheets, blankets, socks, towels, washrags, hygiene products, or his property.   Plaintiff alleges

that he caught COVID-19.   (Doc. 1, at PageID 19).

8

###### xi.    Claims against Defendant Sgt. Barney

Plaintiff alleges that on February 5, 2022, Sgt. Barney retaliated against him by finding him guilty of a false conduct report issued by Lt. Eaches and required plaintiff to stay in solitary confinement longer than the twenty-nine days allowed per policy.   (Doc. 1, at PageID 19-20).

###### xii.    Claims against Defendant Lt. G. Haywood

Plaintiff alleges that in February 2022 he received legal mail that Lt. Haywood had "tampered with, opened and copied."   Plaintiff further alleges that on March 8, 2022, he was notified that his legal mail was opened, copied, and being withheld.   (Doc. 1, at PageID 20).

###### xiii.    Claims against Defendant C.O. Gillum

Plaintiff alleges that C.O. Gillum retaliated against him and violated ODRC policy when, on March 31, 2022, he packed up plaintiff's property for plaintiff to go to the "hole" and intentionally left behind plaintiff's pens and either gave away or left plaintiff's food in the sink. (Doc. 1, at PageID 20-21).

###### xiv.    Claims against Defendant Greg Holdren

Plaintiff alleges that Holdren is supposed to conduct quarterly inspections of the prison, conduct fire drills, test black mold in the showers, and spray for mice and cockroaches.   Plaintiff alleges that Holdren has failed to properly perform his job.   According to plaintiff, there are feces on the walls, bars, and vent.   Plaintiff claims that he has been having headaches and chest pains from "all the 'human waste' and 'black mold' in the shower."   (Doc. 1, at PageID 21).

###### xv.    Claims against Defendant C.O.s Saville and Harsley and Sgts. Tackett and King

Plaintiff alleges that on March 31, 2022, between 10:08 and 10:40 a.m., C.O.s Saville and Harsley told him to "cuff up" so they could check for black mold and feces per the request of

9

Unit Manager Harris, who is not named as a defendant.    Plaintiff alleges that he was placed in the shower while they inspected his cell.    Plaintiff states that, when he returned to his cell, he saw that Seville and Harsley had thrown his property onto his bed to retaliate against and harass him and that, when plaintiff saw the condition of his property, he asked to speak to a supervisor. Plaintiff alleges that he was then placed back into shower, where he became dizzy, developed chest pains and a headache, fell, and hit his head.    Plaintiff states that he told Sgt. Tackett that he needed to see medical and Tackett said, "You will once you get to J2."    Plaintiff states that once in J2 he told Sgt. King that he needed to see medical, and King denied the request.    (Doc. 1, at PageID 22).

### xvi.    Claims against Defendant C.O.s McCloud and Westwood

Plaintiff alleges that on March 31, 2022, between 1:45 and 2:30 p.m., he told C.O. McCloud that he needed chemicals to clean his cell and to see medical.    McCloud allegedly responded, "That's to[o] bad better tell 2nd shift this my last walk I'm going home."    Plaintiff alleges that McCloud "also stripped [him] out while his BWC was on," in violation of ODRC policy.    Plaintiff states that on the same date he asked C.O. Westwood for chemicals and to see medical, Westwood allegedly responded that he could not get plaintiff cleaning supplies but that he would call medical.    Plaintiff claims that medical never came and that an unidentified nurse walked past his cell but would not stop to assist him.    (Doc. 1, at PageID 22-23).

### xvii.    Claims against Defendant Sgt. King

Plaintiff alleges that on April 1, 2022, he stopped Sgt. King to request chemicals to clean his cell because there appeared to be feces on the walls and vent and to tell King that medical never came to see him when she made the rounds.    (Doc. 1, at PageID 23).

10

xviii.   **Claims against Defendant Unit Manager Sparks**

Plaintiff alleges that on April 1, 2022, as Unit Manager Sparks was passing out free envelopes to the inmates, plaintiff told him that he needed chemicals to clean his cell.   Sparks alleged responded, "I will let the officers know on 2nd shift."   Plaintiff alleges that he never received cleaning supplies, and on April 5, 2022, he got sick and needed to see medical.   (Doc. 1, at PageID 23).

For relief, plaintiff seeks damages and injunctive relief.   (Doc. 1, at PageID 24).

**C.     Analysis of the Complaint**

Plaintiff's complaint involves claims that arise out of separate incidents and involve different defendants and issues.   A plaintiff may not join unrelated claims and various defendants unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action."   Fed. R. Civ. P. 20(a)(2).   *See also George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").

"[T]he proper remedy for . . . misjoinder is to sever the claims against the unrelated parties and dismiss those claims without prejudice."   *Cage v. Mich.*, No. 16cv11679, 2018 WL 3729062, at *2 (E.D. Mich. Aug. 6, 2018).   Under Fed. R. Civ. P. 21, courts have "broad discretion 'to order severance to avoid causing unreasonable prejudice and expense to the

11

defendant . . . and to avoid great inconvenience in the administration of justice.'"  *Proctor v. Applegate*, 661 F. Supp.2d 743, 781 (E.D. Mich. 2009) (quoting *Nali v. Mich. Dep't of Corrections*, No. 07-10831, 2007 WL 4465247, *3 (E.D. Mich. 2007)) (alteration in original).

At this stage in the proceedings, without the benefit of briefing by the parties to this action, and addressing the claims in the order they are pleaded, the undersigned concludes that plaintiff may proceed with his Eighth Amendment failure-to-protect claim against defendants Milner and Woods based on the alleged February 20, 2021 incident.   (Doc. 1, at PageID 11-12). However, for the reasons below, plaintiff's claims against defendants ODRC, ODRC Director Chambers-Smith, SOCF Warden Erdos, and Mahlman, although arguably related to plaintiff's claims against Milner and Woods in so far as plaintiff alleges supervisory liability and a general interference by Mahlman in the grievance process, fail to state a claim upon which relief may be granted and should be dismissed.   Plaintiff's remaining claims against defendants Murry, Davis, Hale, Justice, Wellman, Wasmer, Kinner, Gaffin, Harr, Duckworth, Tabor, Kelly, Hayward, Barney, Eaches, Tackett, King, Saville, Harsley, McCloud, Westwood, Holdren, Sparks, and Gillum are improperly joined in this action and should be dismissed without prejudice to plaintiff re-filing a separate action or actions against those defendants if he so wishes.   Fed. R. Civ. P. 20(a)(2); 21.

Plaintiff has failed to state an actionable claim against defendant ODRC because the state agency is not a "person" or legal entity that may be sued under 42 U.S.C. § 1983.   *See, e.g., McGlone v. Warren Corr. Inst.*, No. 1:13cvl26, 2013 WL 1563265, at *3 (S.D. Ohio Apr. 12, 2013) (Bowman, M.J.) (Report & Recommendation) (and numerous cases cited therein) (holding that claims against a state prison and the ODRC should be dismissed at the screening stage

12

because "neither the state prison facility nor the state corrections department is an entity capable of being sued under § 1983"), *adopted*, 2013 WL 2352743 (S.D. Ohio May 29, 2013) (Dlott, J.); *see also Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 355-56 (6th Cir. 2006) (and cases cited therein); *Rodgers v. Michigan Dep't of Corr.*, 29 F. App'x 259, 260 (6th Cir. 2002).   *Cf. Will v. Michigan Dep't of State Police*, 491 U.S. 58, 63-64, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons'" who may be held liable for constitutional violations in a § 1983 action).   Accordingly, plaintiff's claim against the ODRC should be dismissed.

Next, there is nothing in plaintiff's complaint indicating that defendants Chambers-Smith or Erdos were involved in any alleged violations of plaintiff's rights.   To the extent plaintiff seeks to hold these defendants liable under the theory of *respondeat superior*, or because of their supervisory positions, the law does not permit plaintiff to do so.   Rather, "[t]o be held liable, a supervisor must have encouraged the specific incident of misconduct or in some other way directly participated in it."   *Williams v. Hodge*, No. 3:-8-0387, 2009 WL 47141, at *4 (M.D. Tenn. Jan. 7, 2009) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).   Plaintiff alleges no such facts against defendants Chambers-Smith or Erdos.   Accordingly, plaintiff's claims against these defendants should be dismissed.

Plaintiff has also failed to state a claim upon which relief can be granted against defendant Mahlman.   To the extent plaintiff alleges that Mahlman falsified state documents and attempted to cover-up any of the defendants alleged conduct, plaintiff's allegations are conclusory and the Court can discern no constitutional violation on the part of Mahlman.   To the extent that plaintiff challenges Mahlman's investigation of or response to his grievances, plaintiff

13

has failed to state a claim because "[t]here is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007).

Moreover, to the extent that plaintiff claims that Mahlman denied him access to the grievance procedure, plaintiff has failed to state a claim because plaintiff has no federal constitutional right to an effective prison grievance procedure. *See, e.g., Hill v. Warden, Southern Ohio Corr. Facility,* No. 1:12cv63, 2012 WL 1639991, at *2 (S.D. Ohio Mar.13, 2012) (Litkovitz, M.J.) (recommending dismissal of portion of complaint complaining about "the failure of prison staff to provide [plaintiff] with inmate grievance forms and other deficiencies in the inmate grievance procedure" because "plaintiff has no federal constitutional right to an effective prison grievance procedure"), *adopted,* 2012 WL 1623565 (S.D. Ohio May 9, 2012) (Weber, J.); *Dearing v. Mahalma,* No. 1:11cv204, 2011 WL 3739029, at *7 (S.D. Ohio Aug.24, 2011) (Barrett, J.) (holding that the plaintiff's allegations referring to "his dissatisfaction with the . . . investigation of [an] allegedly mishandled letter" through the prison grievance process did not state an actionable claim under 42 U.S.C. § 1983); *Williams v. Harris,* No. 1:11cv362, 2011 WL 3667438, at *3 (S.D. Ohio June 15, 2011) (Litkovitz, M.J.) (recommending dismissal of complaint against prison official responsible for responding to institutional grievances because the plaintiff had "no constitutional right to an effective grievance procedure"), *adopted,* 2011 WL 3667389 (S.D. Ohio Aug. 22, 2011) (Dlott, J.); *see also Walker v. Michigan Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005) (per curiam) (and cases cited therein); *Argue v. Hofmeyer,* 80 F. App'x 427, 430 (6th Cir. 2003) (and cases cited therein); *Overholt v. Unibase Data Entry, Inc.,* No. 98–3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000)).

14

Similarly, plaintiff's claims that his constitutional rights were violated in connection with being placed on restricted access to the grievance procedure should be dismissed. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus–X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell,* 250 F.3d 1032, 1037 (6th Cir. 2000); *Shehee,* 199 F.3d at 300–301. However, "[t]he Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim." *Weatherspoon v. Williams*, No. 2:14-cv-108, 2015 WL 2106401, at *5 (W.D. Mich. May 6, 2015) (citing *Jackson v. Madery,* 158 F. App'x 656, 660 (6th Cir. 2005), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018); *Walker,* 128 F. App'x at 446; *Kennedy v. Tallio,* 20 F. App'x 469, 471 (6th Cir. 2001); *Corsetti v. McGinnis,* 24 F. App'x 238, 241 (6th Cir. 2001)). The right to file institutional grievances without being subject to retaliation extends only to the filing of non-frivolous grievances and "an ordinary person of reasonable firmness would not be deterred from filing non-frivolous grievances merely because he or she had been placed on modified status." *Walker,* 128 F. App'x at 445–46.

Additionally, to the extent that plaintiff is asserting that because of the modified access to the grievance process he is unable to exhaust his administrative remedies and thus is unable to

15

file a claim in federal court, the claim is also without merit.   When a plaintiff has no other remedies available to him to exhaust his grievance, a district court would then be able to hear a related federal claim, since all possible administrative remedies would have been attempted. *See, e.g., Hartsfield v. Mayer,* No. 95–1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996) (holding that the MDOC's modified grievance status does not in any way impinge upon a plaintiff's First Amendment right to access to courts); *see also* 42 U.S.C. § 1997e(a) (requiring only exhaustion of available administrative remedies).   A corrections officer therefore cannot prevent an inmate from proceeding to court by refusing to accept a grievance or an appeal. Plaintiff's claims against defendant Mahlman should therefore be dismissed.

The remainder of the complaint should be dismissed without prejudice because it consists of claims that are unrelated to plaintiff's claims against defendants Milner and Woods. Plaintiff's claims against defendants Murry, Davis, Hale, Justice, Wellman, Wasmer, Kinner, Gaffin, Harr, Duckworth, Tabor, Kelly, Hayward, Barney, Eaches, Tackett, King, Saville, Harsley, McCloud, Westwood, Holdren, Sparks, and Gillum do not arise out of the same transaction, occurrence, or series of transactions or occurrences as the claims against Milner and Woods, which occurred approximately three months before the earliest of plaintiff's remaining claims and involve separate and distinct factual and legal issues.   Plaintiff, therefore, has improperly included his remaining claims in this action and they should be dismissed without prejudice to plaintiff re-filing a separate action or actions including such claims if he so wishes. Fed. R. Civ. P. 20(a)(2); 21.

Accordingly, in sum, plaintiff may proceed at this juncture with his Eighth Amendment failure-to-protect claims against defendants Milner and Woods based on the alleged February 20,

16

2021 incident. For the reasons stated above, plaintiff's unrelated claims against defendants Murry, Davis, Hale, Justice, Wellman, Wasmer, Kinner, Gaffin, Harr, Duckworth, Tabor, Kelly, Hayward, Barney, Eaches, Tackett, King, Saville, Harsley, McCloud, Westwood, Holdren, Sparks, and Gillum should be **SEVERED** and **DISMISSED WITHOUT PREJUDICE**. Fed. R. Civ. P. 20(a)(2); 21. Plaintiff's claims against defendants ODRC, ODRC Director Chambers-Smith, SOCF Warden Erdos, and Mahlman fail to state a claim upon which relief may be granted and should be **DISMISSED with prejudice.** 28 U.S.C. § 1915A(b)(1).

## II.    Motion for Preliminary Injunction/Temporary Restraining Order

As noted above, plaintiff has also filed a Motion for Preliminary Injunction and Temporary Restraining Order. (Doc. 7). Plaintiff seeks to enjoin defendants "from harassing, assaulting, allowing [plaintiff] to be assaulted, tampering with [plaintiff's] mail, retaliating against [plaintiff], destroying/taking [plaintiff's] property without cause, and subjecting [plaintiff] to cruel and unusual punishment." (Doc. 7, at PageID 298).

In determining whether to issue a preliminary injunction/temporary restraining order, this Court must balance the following factors:

1. Whether the party seeking the injunction has shown a "strong" likelihood of success on the merits;

2. Whether the party seeking the injunction will suffer irreparable harm absent the injunction;

3. Whether an injunction will cause others to suffer substantial harm; and

4. Whether the public interest would be served by a preliminary injunction.

*Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689-90 (6th Cir. 2014); *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228

17

F.3d 729, 736 (6th Cir. 2000)). The four factors are not prerequisites but must be balanced as part of a decision to grant or deny injunctive relief. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). "[A] district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003), *abrogated on other gds. by Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).

"The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits." *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 848-49 (6th Cir. 2017) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). When a prisoner requests an order enjoining a state prison official, the Court must "proceed with caution and due deference to the unique nature of the prison setting." *White v. Corr. Med. Servs.*, No. 1:08-cv-277, 2009 WL 529082, at *2 (W.D. Mich. Mar. 2, 2009) (citing *Kendrick v. Bland*, 740 F.2d 432, 438 n. 3 (6th Cir. 1984); *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995)). In deciding if a preliminary injunction is warranted, the Court must "weigh carefully the interests on both sides." *Lang v. Thompson*, No. 5:10-cv-379-HRW, 2010 WL 4962933, at *4 (E.D. Ky. Nov. 30, 2010) (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975)). A preliminary injunction is an extraordinary remedy that should only be granted "upon a clear showing that the plaintiff is entitled to such relief." *S. Glazer's Distributors of Ohio, LLC*, 860 F.3d at 849 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *see also Overstreet*, 305 F.3d at 573.

A preliminary injunction is not warranted in this case. The purpose of a preliminary injunction -- to preserve the status quo until a trial on the merits can be held, *see Southern Milk Sales, Inc. v. Martin*, 924 F.2d 98, 102 (6th Cir. 1991) -- would not be served. The present

18

status quo in this case is, according to plaintiff, that he has suffered numerous violations of his constitutional rights.   The remedy plaintiff presently seeks is more than an injunction maintaining the status quo; he seeks an Order from this Court requiring defendants to affirmatively correct constitutional deficiencies yet to be proven.   Such affirmative relief is generally beyond the scope and purpose of preliminary injunctive relief.   *See id*.

A preliminary injunction is also not warranted to the extent that plaintiff seeks injunctive relief as to claims that are improperly joined in this action.   *See Taylor v. Van Lanen*, No. 11-C-249, 2011 WL 4344233, at *3 (E.D. Wis. Sept. 14, 2011) ("For the reasons stated above, however, claims arising out of that incident are not properly joined here.   Accordingly, the motion for preliminary injunctive relief will be denied.").

Accordingly, for the reasons stated above, it is **RECOMMENDED** that plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 7) be **DENIED.**

### IT IS THEREFORE ORDERED THAT:

1.   Plaintiff serve a summons and copy of the complaint on defendants Milner and Woods.   Because plaintiff paid the filing fee in this matter and is not proceeding *in forma pauperis*, he is responsible for serving the complaint on defendants Milner and Woods in compliance with the Federal Rules of Civil Procedure.   *See* Fed. R. Civ. P. 4.   Failure to comply with the terms of this order shall result in a report and recommendation to the district judge that plaintiff's claims against defendants Milner and Woods be dismissed for lack of service.   Any questions regarding service should be directed to the Clerk of Court.

2.   Plaintiff shall serve upon defendants Milner and Woods or, if appearance has been entered by counsel, upon their attorney(s), a copy of every further pleading or other document

19

submitted for consideration by the Court.   Plaintiff shall include with the original paper to be

filed with the Clerk of Court a certificate stating the date a true and correct copy of any

document was mailed to Milner or Woods or their counsel.   Any paper received by a district

judge or magistrate judge which has not been filed with the Clerk or which fails to include a

certificate of service will be disregarded by the Court.

3.   Because plaintiff has paid the required fee (Doc. 5 (noting receipt of payment)), the

Court has denied as moot his motion to proceed *in forma pauperis* (Doc. 11) by separate Order.

4.   Plaintiff shall inform the Court promptly of any changes in his address which may

occur during the pendency of this lawsuit.

## IT IS THEREFORE RECOMMENDED THAT:

1.      Plaintiff's unrelated claims against defendants Murry, Davis, Hale, Justice,

Wellman, Wasmer, Kinner, Gaffin, Harr, Duckworth, Tabor, Kelly, Hayward, Barney, Eaches,

Tackett, King, Saville, Harsley, McCloud, Westwood, Holdren, Sparks, and Gillum be

**SEVERED** and **DISMISSED WITHOUT PREJUDICE**.   Fed. R. Civ. P. 20(a)(2); 21.

2.      Plaintiff's claims against defendants ODRC, ODRC Director Chambers-Smith,

SOCF Warden Erdos, and Mahlman be **DISMISSED with prejudice.**   28 U.S.C.

§ 1915A(b)(1).

3.      Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order

(Doc. 7) be **DENIED.**

4.      The Court certify pursuant to 28 U.S.C. § 1915(e)(2)(B) that for the foregoing

reasons an appeal of any Order adopting this Report and Recommendation would not be taken in

good faith, and therefore, deny plaintiff leave to appeal *in forma pauperis*.   *See McGore v.*

*Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

## PROCEDURE ON OBJECTIONS:

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date:  8/3/2022

Karen L. Litkovitz
United States Magistrate Judge

21